THE STATE OF OHIO, APPELLEE, *v.* PLUMMER, APPELLANT.

[Cite as State *v.* Plummer (1986), 22 Ohio St. 3d 292.]

(No. 85-541—Decided March 19, 1986.)

*Ronald L. Rehm,* for appellee.

*Eric D. Ritz,* for appellant.

CELEBREZZE, C.J. In the case *sub judice* appellant contends that in order for a urinalysis test result to be admissible in a prosecution under R.C. 4511.19,[1] the urine sample must be treated in compliance with the

_____

[1] R.C. 4511.19 reads as follows:

"(A)  No person shall operate any vehicle, streetcar, or trackless trolley within this state if any of the following apply:

"(1)  The person is under the influence of alcohol or any drug of abuse, or the combined influence of alcohol and any drug of abuse;

"(2)  The person has a concentration of ten-hundredths of one per cent or more by weight of alcohol in his blood;

"(3)  The person has a concentration of ten-hundredths of one gram or more by weight of alcohol per two hundred ten liters of his breath;

"(4)  The person has a concentration of fourteen-hundredths of one gram or more by weight of alcohol per one hundred milliliters of his urine.

"(B)  In any criminal prosecution for a violation of this section or of an ordinance of any municipal corporation relating to operating a motor vehicle while under the influence of alcohol, the court may admit evidence on the concentration of alcohol in the defendant's blood, breath, or urine at the time of the alleged violation as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance withdrawn within two hours of the time of such alleged violation.

"When a person submits to a blood test at the request of a police officer under section 4511.191 of the Revised Code, only a physician, or a registered nurse, or a qualified technician or chemist shall withdraw blood for the purpose of determining its alcoholic content. This limitation does not apply to the taking of breath or urine specimens. A physician, a registered nurse, or a qualified technician or chemist may refuse to withdraw blood for the purpose of determining the alcohol content of the blood, if in his opinion the physical welfare of the person would be endangered by the withdrawing of blood.

"Such bodily substance shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director of health pursuant to section 3701.143 of the Revised Code.

"If there was at the time bodily substance was withdrawn a concentration of less than ten-hundredths of one per cent by weight of alcohol in the defendant's blood, less than ten-hundredths of one gram by weight of alcohol per two hundred ten liters of his breath, or less than fourteen-hundredths of one gram by weight of alcohol per one hundred milliliters of his urine, such fact may be considered with other competent evidence in determining the guilt or innocence of the defendant.

"Upon the request of the person who was tested, the results of such test shall be made available to him, his attorney, or agent, immediately upon the completion of the test analysis.

"The person tested may have a physician, a registered nurse, or a qualified technician or chemist of his own choosing administer a chemical test or tests in addition to any administered at the direction of a police officer, and shall be so advised. The failure or inability

regulation set forth in the Ohio Adm. Code 3701-53-05(F). For the following reasons, we find that there has been substantial compliance with this regulation and affirm appellant's conviction.

Appellant's test result showed a urine-alcohol content of twenty hundredths of a gram by weight per one hundred milliliters of his urine, in excess of the statutory limit set forth in R.C. 4511.19(A)(4). Whether a person's blood-alcohol, breath-alcohol or urine-alcohol content is tested, R.C. 4511.19(B) requires that "[s]uch bodily substance shall be analyzed in accordance with methods approved by the director of health * * *."

In regard to the collection and handling of urine specimens, the Director of Health has promulgated Ohio Adm. Code 3701-53-05(F) which states that "[w]hile not in transit to a laboratory or under examination all urine * * * specimens shall be refrigerated at a temperature of forty-two degrees Fahrenheit or below."

In the case *sub judice,* strict compliance with this regulation has not been shown. In the one hour and twenty-five minute period of time between collection of appellant's urine sample and mailing to Columbus, Eckstein indicated the specimen was not refrigerated. Further, Keckley did not say that appellant's specimen was refrigerated during the morning of its arrival in the Columbus laboratory, prior to its examination around lunch time that day. If, however, we were to agree with appellant that any deviation whatsoever from this regulation rendered the results of a urine analysis inadmissible, we would be ignoring the fact that strict compliance is not always realistically or humanly possible.

This court, in *State* v. *Steele* (1977), 52 Ohio St. 2d 187 [6 O.O.3d 418], held that rigid compliance with Department of Health regulations in regard to alcohol testing was not necessary in order for test results to be admissible. In *Steele,* we found that the twenty-minute visual observation period prior to testing required by regulation had been fulfilled even though the arresting officer had averted his gaze from the defendant for a few seconds while the officer exited and walked around his patrol car.

Thus, there is leeway for substantial, though not literal, compliance with such regulations. In the case *sub judice* a period of one hour and twenty-five minutes elapsed from obtaining appellant's urine sample until mailing. During this interval, packaging, labeling and delivery to mail deposit were required. Once received by the laboratory two days later, there was at worst a three- to four-hour interval when the specimen may

---

to obtain an additional test by a person shall not preclude the admission of evidence relating to the test or tests taken at the direction of a police officer.

"Any physician, registered nurse, or qualified technician or chemist who withdraws blood from a person pursuant to this section, and any hospital, first-aid station, or clinic at which blood is withdrawn from a person pursuant to this section, is immune from criminal liability, and from civil liability that is based upon a claim of assault and battery or based upon any other claim that is not in the nature of a claim of malpractice, for any act performed in withdrawing blood from the person."

not have been refrigerated in compliance with the administrative code. We agree with the court of appeals' reasoning that the storage temperature requirement of Ohio Adm. Code 3701-53-05 contemplates cases involving longer periods of specimen retention, rather than a relatively slight delay between receipt and testing as in this case. Therefore, we find that the state substantially complied with this administrative regulation.

Additionally, appellant has not alleged at any stage of this proceeding, much less demonstrated, that he has been prejudiced in any way by the state's failure to comply with the literal requirements of the administrative regulation regarding refrigeration of a urine specimen. Appellant simply has not demonstrated that this failure even affected the results of his urinalysis, much less that any failure to comply resulted in error detrimental to him.[2]

We therefore hold that absent a showing of prejudice to a defendant, the results of a urine-alcohol test administered in substantial compliance with Ohio Adm. Code 3701-53-05 are admissible in a prosecution under R.C. 4511.19.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

SWEENEY, LOCHER, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.

---

[2] Indeed, it appears that the alleged failure to keep appellant's urine sample refrigerated may have benefited rather than harmed him. The state brings our attention to a paper authored by Leonard J. Porter, Chief Toxicologist and Chief of the Alcohol Testing, Approval and Permit Program for the Ohio Department of Health. The paper states in pertinent part that "[w]hen specimens are not in transit or analysis, it is required by rule that they be refrigerated. *This further reduces vapor loss of alcohol* * * *." (Emphasis added.) Porter, The Impact of Chemical Test for Intoxication (Senate Bill 432) Considered, published in The New Ohio Drunk Driving Laws (1983), at 159.

See, also, *Columbus* v. *Kilts* (Sept. 15, 1981), Franklin App. Nos. 81AP-222 and -223, unreported, where the court noted uncontroverted expert testimony indicating that the failure to refrigerate below forty-two degrees Fahrenheit will only result in a *lower* test result.