The STATE of Ohio, Appellee,

v.

BENNETT, Appellant.

[Cite as *State v. Bennett* (1990), 66 Ohio App.3d 595.]

Court of Appeals of Ohio,
Portage County.

No. 89–P–2088.

Decided June 4, 1990.

*David W. Norris,* Prosecuting Attorney, and *David Foster,* for appellee.

*Robert Paoloni* and *Michael Meaney,* for appellant.

FORD, Judge.

Appellant, Cynthia Bennett, was convicted by a jury of operating a motor vehicle with a prohibited concentration of alcohol in violation of R.C. 4511.-19(A)(3). The results of the BAC verifier, which were admitted over objection that was raised by appellant at trial, indicated appellant had a blood-alcohol content of 0.227.

Appellant timely appeals her sentence, raising the following sole assignment of error:

"The trial court erred to the prejudice of defendant-appellant in overruling defendant-appellant's objection in permitting the results of the BAC verifier to be admitted into evidence in that the state failed to comply with the requirements of O.R.C. 4511.19 and Ohio Administrative Code 3701–53–02[C] which require that mandatory radio frequency interference surveys be performed for each breath testing instrument and that the survey results be recorded in a form set forth by the Ohio Administrative Code."

Essentially, appellant is challenging the admission of the results of the breathalyzer because the proper foundation was not established to show that the BAC verifier was in proper working order. Specifically, appellant argues that the state failed to present the radio frequency interference ("RFI") survey that is required by Ohio Adm.Code 3701–53–02(C), which provided:

"A radio frequency interference (RFI) survey shall be performed for each breath testing instrument listed in paragraphs (A)(1) to (A)(3) and (A)(5) of this rule that is in operation at each breath testing site. RFI surveys are not required for the instrument listed in paragraph (A)(4) of this rule. Survey results shall be recorded on the form set forth in appendix G to this rule. The original RFI survey form and any subsequent RFI survey forms shall be kept on file in the area where tests are performed. A new survey shall be conducted when a breath testing instrument's spatial placement or axis is changed from that designated in the most recent survey form. Radio transmitting antennae shall not be used within any RFI-affected zone during conduct of a subject test or a calibration check."

In *State v. Fley* (Dec. 14, 1988), Hamilton App. No. C–870811, unreported, 1988 WL 133000, the First District analyzed the requirements of Appendix G:

"As of January 1, 1987, the Director of Health set forth a more exact and reliable method of 'surveying' intoxilyzers (and other breath-testing instruments) to assure noninterference by radio transmissions. Ohio Adm.Code 3701–53–02 as effective on that date requires the measurement of the exact distances at which radio transmissions (on all frequencies used by the particular police department) actually interfere with the operation of the intoxilyzer and cause a variance in the 'display' greater than .005. The regulation requires the participation of two officers with hand radios; one officer remains at the intoxilyzer to verify the receipt of radio transmissions and to observe the 'display' readings, and the other transmits radio messages while moving from thirty feet away towards the intoxilyzer along eight specific radials (all radials make an angle of forty-five degrees with each of the two adjoining radials). The results are recorded and remain in effect until the intoxilyzer is moved or its axis is changed." *Id.* at 4–5.

Until recently, the necessity of compliance with this Health Department edict has not been challenged in this district in terms of admissibility of the BAC results.

The printout from the machine indicates an automatic internal testing mechanism for radio frequency interference. Specifically, in this cause, the printout notes "NO RFI present." However, this is insufficient to fulfill the requirement promulgated by Ohio Adm.Code 3701–53–02.

This court, in *State v. Joles* (Feb. 5, 1988), Lake App. No. 12–171, unreported, 1988 WL 12950, noted:

"Before the results of alcohol tests are admissible as evidence, it is incumbent upon the state to prove the specimen was taken and analyzed in accordance with the methods and rules established by the Ohio Department of Health." *Id.* at 3.

Nothing within the record indicates the survey was performed as required by the Department of Health's regulation. The trooper testified that "[the BAC verifier would produce] an invalid sample of breath if there was radio frequency interference during the breath test. * * *"

With respect to the test administered to the appellant, he testified:

"There is an [*sic*] radio frequency interference print indicating in this case there was no RFI present."

Nothing, though, indicates the RFI survey specified in Ohio Adm.Code 3701–53–02(C) was conducted. Independently, nothing within the record provided a basis upon which the trial court could determine the validity of the

internal audit of the machine. The trooper is not an expert in that regard, and he can only testify as to the printout.

Appellant also posits a compelling argument to reject the contention that the printout indicating "NO RFI present" would be sufficient to clear the hurdle of the regulation by the concept of "substantial compliance" with the regulations as adopted in *State v. Plummer* (1986), 22 Ohio St.3d 292, 22 OBR 461, 490 N.E.2d 902. Appellant also notes that the regulation was adopted in light of the fact that the BAC verifier had the automatic internal testing mechanism. Furthermore, this argument was implicitly rejected in *Fley, supra,* by noting that the more strident regulations were promulgated after *Plummer* by the Director of Health. This would suggest an intended stricter compliance with the administrative pronouncements rather than the "substantial compliance" proposition announced in *Plummer* for use of the breathalyzer when testing for RFI. This intimates that to substantially comply with this regulation, the state must be ready to present the most recent RFI survey to provide a basis to show the machine is in proper working order.

Since the state failed to do so, the court should have sustained appellant's motion to suppress and subsequent motion to dismiss.

The assignment of error is with merit.

For the foregoing reasons, the judgment of the trial court is reversed and remanded.

*Judgment reversed*
*and cause remanded.*

CHRISTLEY, P.J., and JOSEPH E. MAHONEY, J., concur.