OPINION
Defendant-Appellant Richard J. Lucas appeals from a judgment of the County Court of Darke County overruling his motion to suppress certain evidence obtained following a routine traffic stop. Lucas claims the initial stop was illegal because it was without probable cause, that the State failed to establish its compliance with the regulations relating to the operation and maintenance of its breath alcohol concentration testing equipment, and that the trial court impermissibly shifted the burden of proof as to the State's non-compliance with one of those regulations to Lucas.
This case has its genesis in the events of April 11, 1999, in Darke County, Ohio at approximately 2:00 a.m. At that time, Sergeant Joe Little of the Ohio State Highway Patrol was patrolling north of Greenville on State Route 121 in a southbound direction when he noticed a pick-up truck and a motorcycle approaching in the northbound lane of State Route 121. After the vehicles passed by him, Little suspected that the motorcyclist was following the pick-up truck too closely so he made a u-turn and followed the motorcycle, which it was later determined was being operated by Lucas. Sergeant Little saw the motorcycle pass the pick-up truck, going left of the double yellow center line as it did so. After passing the truck himself, Little saw the motorcycle weaving within the northbound lane, and he paced the motorcycle at 70 miles per hour in a stretch of highway with a posted speed limit of 55 miles per hour. Little then effected a traffic stop of Lucas.
 When Lucas stopped, he parked his motorcycle and walked back toward Little. Little testified that Lucas was very unsteady on his feet, his speech was slurred, and his eyes were bloodshot and glassy. In addition, Little detected a strong odor of alcohol on Lucas' breath. Little asked Lucas if he had been drinking, and Lucas acknowledged that he had a couple of drinks earlier. Sergeant Little then administered the horizontal gaze nystagmus and heel-to-toe balance tests, both of which indicated Lucas was intoxicated. Lucas was arrested and transported to the Darke County Sheriff's Department where Little later administered a breath alcohol concentration test (hereinafter "BAC test").
As a result of the BAC test and Sergeant Little's earlier observations, Lucas was charged with driving while under the influence of alcohol in violation of R.C. § 4511.19(A)(1), operating a motor vehicle under the influence of alcohol in violation of R.C. § 4511.19(A)(3), and passing to the left of a solid yellow line in violation of R.C. § 4511.31.
On May 5, 1999, Lucas filed a motion to suppress any and all evidence flowing from the arrest on grounds that it was warrantless and without probable cause. In addition, he sought suppression of the BAC test results claiming that the test was invalid because it was not conducted in compliance with the relevant Department of Health regulations. Lucas was later permitted to orally amend his motion to specifically allege that,inter alia, the solution used to calibrate the test instrument was not properly refrigerated prior to Lucas' BAC test, and that no radio frequency interference (hereinafter "RFI") test was performed on the BAC test instrument in conjunction with Lucas' BAC test.
Following a hearing on the matter, the trial court overruled Lucas' motion to suppress. On September 20, 1999, Lucas pled no contest to driving under the influence of alcohol and the State dismissed the passing to the left of a solid yellow line count pursuant to a plea agreement. Lucas' timely notice of appeal followed.
Preliminarily, we note that "[w]hen reviewing a trial court's ruling on a motion to suppress evidence, we must accept the trial court's factual findings if they are supported by competent, credible evidence." State v. Sims (1998), 127 Ohio App.3d 603,612. Moreover, because a trial court assumes the role of the trier of fact in considering a motion to suppress, it is in the best position to resolve factual questions and evaluate the credibility of the witnesses. State v. Clary (Sept. 30, 1996), Lawrence App. No. 96CA07, unreported, citing State v. Mills
(1992), 62 Ohio St.3d 357, 366. With these principles in mind, we turn to the merits of Lucas' assigned errors. For organizational purposes, we will address his third assignment of error first, then proceed to consider his first and second assignments of error together.
Lucas' third assignment of error is set forth as follows:
 The Trial Court erred in finding, based upon the facts sub judice that there was probable cause for a traffic stop.
Lucas' entire argument under this assignment of error focuses on the relative credibility of his own and Sergeant Little's testimony at the suppression hearing. As stated above, however, the weight to be given the evidence and the credibility of the witnesses is a determination to be made by the trier of fact, in this case, the trial court. As we are disinclined to second guess the trial court's assessment of the relative credibility of Lucas' and Sergeant Little's testimony, the third assignment of error is overruled.
Lucas' first and second assignments of error, respectively, are presented as follows:
 The Trial Court erred in finding, through inference and assumption, that the State had established compliance with Ohio Department of Health Regulations for the operation and maintenance of breath testing equipment.
The Trial Court erred in requiring the Defendant to prove that the State had not complied with Ohio Department of Health Regulations for the operation and maintenance of breath testing equipment.
In these assignments of error, Lucas claims the State failed to prove that the BAC test administered to him was free from RFI, and that the liquid used for calibrating the instrument had been properly stored prior to his test. In addition, Lucas claims the trial court impermissibly placed the burden of proving that the solution was not properly refrigerated on him, which he equates with placing him in the position of having to prove his innocence.
When the admissibility of a breath test is challenged in a motion to suppress, absent a showing of prejudice to a defendant, the State must show that it substantially complied with the regulations relating to such tests. See State v. Plummer (1986),22 Ohio St.3d 292, syllabus. O.A.C. § 3701-53-04(A)(2) sets forth the testing requirements relating to BAC instruments and RFI as follows:
 The instrument shall be checked to detect RFI using a hand-held radio normally used by the law enforcement agency. The RFI detector check is valid when the evidential breath testing instrument detects RFI or aborts a subject test. If the RFI detector check is not valid, the instrument shall not be used until the instrument is serviced.
Here, evidence was submitted at the suppression hearing showing that the BAC instrument used to determine Lucas' breath alcohol concentration was tested on April 4, 1999, before Lucas was arrested, and again on April 11, 1999, after his BAC test was administered. Lucas claims that the record does not contain the results of the RFI tests. Evidence tickets from both RFI tests, however, were produced at the suppression hearing, and established that the instrument did detect the RFI produced by the hand-held radio used in the procedure. In addition, Douglas Bradley, the assistant post commander of the Highway Patrol in Eaton who is responsible for maintaining the records associated with the BAC instrument in Darke County, testified that the instrument successfully detected the RFI in both tests. Thus, the State showed substantial compliance with the regulation.
O.A.C. § 3701-53-04(C) states in pertinent part that "[c]alibration solutions shall be kept under refrigeration after first use, when not being used." Lucas contends that the State failed to produce evidence that the solution used to calibrate the BAC instrument used in Lucas' test had been refrigerated and at what temperature it had been stored. Bradley testified without objection, however, that the procedure for storing the solution bottles was to keep them in a refrigerator when not in use, and to check the temperature of the refrigerator each time an instrument is calibrated to make sure it is at 35 degrees or lower. Although Lucas elicited from Bradley on cross examination that it was at least theoretically possible that a power failure could cause the refrigerator to malfunction thereby raising the temperature above 35 degrees, the record does not indicate that any such power failure ever occurred. Hence, we find the State carried its burden to show substantial compliance with the requirement that the calibration solution be kept refrigerated when not in use.
Finally, Lucas claims the trial court impermissibly placed on Lucas the burden of proving that the calibration solution was not stored in refrigeration. Lucas' argument rests upon the trial court's statement in its judgment entry that "[d]efense [c]ounsel, however, was not able to provide the court any evidence that the solution was not refrigerated." Docket No. 23 at 3. Though the issue before us in Greenville v. Holzapfel (1993), 85 Ohio App.3d 383, concerned RFI surveys rather than refrigeration of calibration solutions, we find our reasoning therein applicable. In Holzapfel we stated the following:
 [A]s long as the intoxilyzer and the external detector are established to be in proper operating condition, there is a presumption that the test protocol prohibiting certain radio operation during test periods has not been violated.
If the accused believes that prohibited radio usage occurred during his test period, he may rebut this presumption by coming forward with evidence that such prohibited radio usage did occur at the relevant time. * * * Holzapfel presented no evidence of prohibited radio usage during his intoxilyzer test and therefore did not meet what would ordinarily be his burden as to this variable. Id. at 389-90.
In the present case, the State presented evidence showing it had substantially complied with the regulation pertaining to the refrigeration of the solution used to calibrate the equipment used to administer Lucas' breath test. Having done so, the burden of showing an interruption in the refrigeration of the solution was on Lucas. Like Holzapfel, however, he failed to present any evidence that the solution was ever left unrefrigerated. Consequently, we find no error in the trial court's acknowledgment of that fact.
We further find that Lucas has shown no prejudice from the State's alleged failure to comply with the regulations relating to RFI testing of the BAC instrument and the refrigeration of the calibration solution. Consequently, the State's showing of substantial compliance with the regulations is sufficient to defeat Lucas' motion to suppress. See Plummer, supra at syllabus.
We have found Lucas' first and second assignments of error to be without merit, and they are consequently overruled. Having found his third assignment of error similarly lacking in merit, the judgment of the trial court is affirmed.
BROGAN, J. and FAIN, J., concur.